IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CORNELL COLTON, *On behalf of himself and all others similarly situated,* | ) ) ) ) |
| Plaintiff, | ) ) Case No. 2:16-cv-04002-NKL |
| v. | ) ) ) |
| HIBBETT SPORTING GOODS, INC., | ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant Hibbett Sporting Goods' Motion to Compel Arbitration [Doc. 14]. For the following reasons, the motion is granted.

**I.  Background**

In June 2015, Plaintiff Cornell Colton applied online for an employment position with Hibbett, a sports apparel retailer. Hibbett interviewed Colton and instructed him to complete several online forms. One of these forms, the "Mutual Arbitration Agreement," states in relevant part:

> Employee and the Company both agree that all legal disputes, controversies, and claims ("claims") . . . including without limitation any claims relating to, or occurring during (even if directly relating to) Employee's application/assignment/employment or separation thereof with the Company, shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein.

1

> . . . A party wishing to initiate arbitration must notify the other party in writing by certified mail prior to the expiration of the applicable statute of limitations date. The notice must clearly demand arbitration and identify the party requesting arbitration by name, address, and telephone number; describe the facts upon which the claim is based, the persons involved, and the date and location of any occurrences giving rise to the claim; and describe the remedy requested. Notice to the Company must be sent to its senior Human Resources official at the Company's corporate office, with a mandatory copy to the Company's General Counsel. Notice to Employee must be sent to Employee's most recent residence address reflected in the Company's employment records.
>
> . . . This Agreement may be modified or terminated only by a writing signed by Employee and the Chief Executive Officer of the Company, or by the Company after 30 days' written notice to Employee. Any modification or termination of this Agreement shall be prospective only and shall not apply to any accrued or pending claims or disputes that have been initiated by either party pursuant to this Agreement prior to the expiration of the 30-day period. The Company and the Employee acknowledge and agree that promises by each other to arbitrate claims rather than litigate them before courts or other bodies and the continued employment relationship between the Company and Employee provide adequate consideration for each other.

[Doc. 20-1, pp. 1-3].

After completing the online forms, including the Arbitration Agreement, Colton was offered a position with Hibbett. On his first day of employment, however, a manager allegedly informed Colton that he could no longer work for Hibbett and was required to leave the store immediately. According to Colton's complaint, this decision was based upon information in a consumer report Hibbett had obtained. Colton further asserts he was not given a reasonable amount of time to challenge any inaccuracy within this report.

Subsequently, Colton filed the present class action suit, alleging that Hibbett took an adverse employment action against him in violation of the Fair Credit Reporting Act.

## II. Discussion

Hibbett maintains that the parties freely entered into a valid Arbitration Agreement that covers their FCRA dispute. Accordingly, Hibbett argues that the Court must compel Colton to arbitrate his claims and stay these proceedings until arbitration occurs. *See* 9 U.S.C. §§ 3, 4.

Agreements to arbitrate disputes are enforceable and strongly favored under federal law. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). If such an agreement is valid, a "court[] must rigorously enforce [it] according to [its] terms." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). Yet an arbitration agreement must still comply with the principles of contract law. *See* 9 U.S.C. § 2; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). In Missouri, a contract must contain an "offer, acceptance, and bargained for consideration." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988). An arbitration agreement is unenforceable if it lacks these required elements.

In his brief, Colton argues that the parties' Arbitration Agreement lacks the third element of contract formation: bargained-for consideration. Under Missouri law, a contract contains valid consideration where a "benefit [is] conferred upon the promisor or [there is] a legal detriment to the promisee." *State ex rel. Kansas City v. State Highway Comm'n*, 163 S.W.2d 948, 953 (Mo. 1942). Pointing to the Modification Provision,

3

which states that the "Agreement may be modified or terminated . . . by [Hibbett] after 30 days' written notice," [Doc. 20-1, p. 3], Colton contends that Hibbett has suffered no legal detriment: even though it promised to arbitrate disputes between the parties, Hibbett reserved for itself a unilateral right to modify the Agreement's terms at its sole discretion.

In its reply brief, Hibbett maintains that the Agreement is supported by valid consideration because it "explicitly states that both Hibbett and [Colton] acknowledge and agree that their respective promises to one another to arbitrate, and the employment relationship, are adequate consideration for the Agreement." [Doc. 14, p. 7].

The Missouri Supreme Court considered an identical argument in *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770 (Mo. banc 2014). In *Baker*, an employer and an at-will employee signed a contract agreeing to arbitrate any disputes. The agreement contained a clause permitting the employer to modify the contract after providing notice. Per its terms, the employer "reserve[d] the right to amend, modify or revoke this agreement upon thirty (30) days' prior written notice to the Employee." *Id*. at 773.

After getting fired from his at-will position, the *Baker* employee filed a class action lawsuit seeking compensation for allegedly unpaid overtime hours. The employer filed a motion to compel arbitration. It argued that the parties had mutually promised to arbitrate such disputes, and that this contract was enforceable because it contained two sources of consideration: (1) "[the employee's] continued employment" and (2) "mutual promises to resolve claims through arbitration." *Id*.

The Missouri Supreme Court disagreed and held that no consideration existed. In reaching this conclusion, the *Baker* court first determined that "continued at-will

4

employment does not constitute valid consideration." *Id*. at 775. Therefore, in accordance with *Baker*, the Court finds that Colton and Hibbett's employment relationship does not provide consideration for their Arbitration Agreement. Hibbett offered Colton only an offer of at-will employment, a promise for which Hibbett incurred no legal detriment.

Nevertheless, the parties' mutual promise to arbitrate constitutes sufficient consideration if that promise was binding upon both sides. *Id.* at 776. A promise is binding rather than illusory if neither "party retains the unilateral ability to avoid its contractual obligations." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 30 (Mo. Ct. App. 2008).

In assessing this question, the *Baker* court drew a distinction between prospective and retroactive modification. When an employer has unilateral power to modify a contract, but is limited to prospective modifications made with reasonable notice, this power does not render illusory any mutual promises to arbitrate. *Baker*, 450 S.W.3d at 777 (*citing Pierce v. Kellogg, Brown & Root, Inc.*, 245 F.Supp.2d 1212, 1215-16 (E.D. Okla. 2003) (a contract contains consideration where the modification provision is limited to prospective amendments)). Where the employer is not limited to prospective changes, however, it can conceivably "disclaim or modify its arbitration promises unilaterally at any time for its own benefit," thus allowing the employer to decide, "in the course of an ongoing arbitration process . . . that, effective in 30 days, it no longer would consider itself bound by the results of the arbitration." *Baker*, 450 S.W.3d at 777. Because the modification provision in *Baker* was not limited to prospective claims, the

Missouri Supreme Court ultimately held that the employer "retain[ed] unilateral authority to amend the agreement retroactively," and so "its promise to arbitrate is illusory and is not consideration." *Id.*

The Arbitration Agreement signed by Colton and Hibbett is plainly distinguishable. It provides that "[a]ny modification or termination of this Agreement shall be prospective only and shall not apply to any accrued or pending claims or disputes that have been initiated by either party pursuant to this Agreement prior to the expiration of the 30 day period." [Doc. 20-1, p. 3]. By its express language, this provision avoids the problem identified in *Baker* by restricting any modification to future disputes. *See Baker*, 450 S.W.3d at 777 ("Unlike this case, the employer in *Pierce* expressly was limited to prospective amendment of the arbitration agreement.").

Colton argues, however, that the language of the Modification Provision permits some retroactive changes. According to Colton's reading, modifications cannot retroactively apply to disputes "that have been initiated." Yet if a claim accrues without being initiated, Hibbett may retroactively modify its arbitration promise. This scenario could occur, Colton further argues, because claims under the Arbitration Agreement must be initiated through a specific process that a party might not necessarily satisfy. A party wishing to "initiate" a claim must "demand arbitration" by "notify[ing] the other party in writing by certified mail." [Doc. 20-1, p. 1]. The notice must identify the other party by name and address, list facts giving rise to the claim, and state the remedy being sought. Any notice delivered to Hibbett must be sent to both its human resources officer as well as its general counsel. "Failure to follow any of the five steps," Colton argues, "means

6

that a claim or dispute has not been "initiated" and [Hibbett] retains the unilateral right to amend and amend [sic] retroactively." [Doc. 19, p. 9].

The Court does not find the initiation process as onerous as Colton contends. If Hibbett seeks to unilaterally modify its promise to arbitrate, Colton has thirty days in which to send two pieces of certified mail. This task is not so problematic that it effectively permits retroactive modification. Considering that the initiation process does not itself allow retroactive changes, and considering that both Colton and Hibbett are bound by its requirements, this process does not alone render Hibbett's promise illusory.

Moreover, the Court does not share Colton's interpretation of the Modification Provision. There are a couple ways to interpret the sentence in question. Under the first reading, "modifications shall be prospective" once the 30-day notice period has expired, meaning that they do not apply to "accrued or pending claims" or to "disputes that have been initiated" during this period. Second, the sentence could indicate an escalating series of qualifications: "modifications shall be prospective," but only as to "accrued or pending claims," meaning only as to "disputes that have been initiated . . . prior to the expiration of the 30 day period."

Colton appears to support the second interpretation, but the Court finds the first more compelling. Given that the Agreement expressly states "modifications shall be prospective," and then, immediately thereafter, clearly contemplates a 30-day window for initiating disputes, it would be incongruous to string together these two clauses—both of which individually limit Hibbett's modification right—in a way that actually expands Hibbett's power.

7

Accordingly, the Arbitration Agreement contains valid consideration and both parties are bound by its terms. Because Colton does not dispute that his FCRA claim falls within the Agreement's scope, he is required to arbitrate it.

**III.  Conclusion**

For the foregoing reasons, Defendant Hibbett Sporting Goods' Motion to Compel Arbitration is granted.  This case is stayed pending the outcome of the parties' arbitration.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  June 13, 2016
Jefferson City, Missouri